LEFFINGWELL RANCHO COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30652.   Promulgated April 27, 1931.

*George H. Koster, Esq.*, for the petitioner.
*R. W. Wilson, Esq.*, for the respondent.

## OPINION.

McMAHON: The only question here presented is whether the respondent, in computing the petitioner's invested capital for the year 1921, erred in applying section 331 of the Revenue Act of 1921, which provides in part as follows:

That in the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received; * * *

The evidence discloses that there was an understanding between the members of the Leffingwell family, who were the principal stockholders in the Leffingwell Rancho, Inc., and the employees of the Leffingwell Rancho, Inc., that the employees should obtain a controlling interest in certain land owned by the corporation. The employees had already formed a corporation, East Whittier Rancho, to operate certain property which the employees had purchased, and it was through the medium of East Whittier Rancho that it was proposed to transfer to the employees the proposed interest. It was found in the negotiations that the employees could not raise sufficient capital to purchase the land outright from the Leffingwell

Rancho, Inc., so the petitioner corporation was formed with the understanding that petitioner would issue $100,000 in first mortgage bonds to the Leffingwell Rancho, Inc., as part payment for the land. The testimony disclosed that it was anticipated that delay would be caused in the issuance of a permit from the California Corporation Commissioner if an application were filed by petitioner to issue stock ·for part cash and part notes. To avoid such a delay, an application was filed for a right to issue 2,800 shares of petitioner's stock and $100,000 par value bonds to the Leffingwell Rancho, Inc., for the property in question. Such permit was duly issued to the petitioner and on April 12, 1920, a stock certificate for 2,800 shares of stock was issued to Leffingwell Rancho, Inc., the name of which had been changed to Leffingwell Investment Company. However, on the same date and at about the same time, in the office of the petitioner, the president of the Leffingwell Investment Company endorsed this certificate to transfer 1,601 shares to East Whittier Rancho, and the certificate for 2,800 shares was canceled. This was in accordance with a preexisting agreement between the Leffingwell Rancho, Inc., and East Whittier Rancho. Fifty additional shares were also issued to East Whittier Rancho on the same date, making the total holdings of East Whittier Rancho, 1,651 shares. A certificate for 996 shares was issued on the same date to the Leffingwell Investment Company. From the tabulation of the stock certificates issued by the petitioner, it appears that at the· time of the issuance of these shares of' stock the petitioner had issued a total of 3,202 shares of its capital stock. Thus the holdings of East Whittier Rancho amounted to about 51½ per cent of the total shares issued by the petitioner, whereas the interest of the Leffingwell Investment Company amounted to less than one-third of the total issued shares of the petitioner. The fact that momentarily the Leffingwell Investment Company held 2,800 shares of the total of 3,202 shares does not, in our opinion, render section 331 of the Revenue Act of 1921 applicable.

In *H. L. Neuman Co. et al.,* 16 B. T. A. 533, practically the same situation existed. In our opinion in that case, we stated:

The only question is whether section 331 of the Revenue Act of 1921 is applicable to the facts. In February, 1919, the petitioner, which had been organized in January, 1919, received from H. L. Neuman the assets of the ice, ice cream and dairy products business formerly conducted by him as an individual and issued to him $199,800 par value of its capital stock in full payment. The other two shares were sold by the corporation to E. W. Neuman and J. W. Neuman for cash at $100 per share. Immediately thereafter, on the same day, the certificate made out to H. L. Neuman, was canceled and new certificates were issued, 2 shares to H. L. Neuman, and 998 shares each to E. W. Neuman and J. W. Neuman. This was done to effect a prior agreement between H. L. Neuman and his sons by which they were to buy

him out. They gave their father their notes, secured by bonds, and the stock was held by their father as collateral.

On this state of facts the petitioner contends that 50 per centum or more of the interest or control did not remain with the same person (H. L. Neuman) who formerly owned the business. That contention is based primarily on the assumption that interest or control did not *remain* in H. L. Neuman, and was never, for practical purposes, in him, since it was understood that the sons were to have control.

We do not believe that section 331 requires a construction that the momentary ownership of nearly all the stock in the corporation by the owner of the predecessor business is enough to make the section applicable. * * *

   *       *       *       *       *       *       *

We do not believe the word "remains," as used by Congress, is to be construed as applying to a state of facts in which the person who receives the stock has entered into a definite agreement to have such stock reissued to others and who carries out such agreement coincident with the issuance to him of the stock. * * *

* * * But in this proceeding there was a definite obligation unperformed, i. e., the immediate transfer of the stock to others. We consider that the interest or control did not "remain" in H. L. Neuman.

Upon the authority of the above quoted case, we hold that an interest of 50 per centum or more in the property or business of the petitioner did not remain in the Leffingwell Investment Company, and that respondent erred in the instant proceeding in applying section 331 of the Revenue Act of 1921. In accordance with the stipulation of the parties, which we have set forth in our findings of fact, we find that there is a deficiency in the sum of $78.74.

Reviewed by the Board.

> *Judgment will be entered that there is a deficiency in the amount of $78.74.*

MURDOCK dissents.